1  Gene J. Stonebarger, State Bar No. 209461
   gstonebarger@stonebargerlaw.com
2  Richard D. Lambert, State Bar No. 251148
   rlambert@stonebargerlaw.com
3  Elaine W. Yan, State Bar No. 277961
   eyan@stonebargerlaw.com
4  STONEBARGER LAW, APC
   75 Iron Point Circle, Suite 145
5  Folsom, CA 95630
   Telephone: (916) 235-7140
6  Facsimile: (916) 235-7141

7  James R. Patterson, State Bar No. 211102
   jim@pattersonlawgroup.com
8  PATTERSON LAW GROUP, APC
   402 West Broadway, 29th Floor
9  San Diego, CA 92101
   Telephone: (619) 756-6990
10 Facsimile: (619) 756-6991

   Reed W.L. Marcy,  State Bar No. 191531
   reedmarcy@sbcglobal.net
   Hallie Von Rock, State Bar No. 233152
   hallievonrock@yahoo.com
   AIMAN-SMITH & MARCY
   7677 Oakport Street, Suite 1020
   Oakland, CA 94621
   Telephone: (510) 562-6800
   Facsimile: (510) 562-6830

11 *Attorneys for Plaintiffs and the Proposed Settlement Class*

12              **UNITED STATES DISTRICT COURT**

13              **NORTHERN DISTRICT OF CALIFORNIA**

14

15 MARTIN PETERSEN, an individual; and on
   behalf of himself and all others similarly
16 situated,
                        Plaintiffs,
17 vs.

18 LOWE'S HIW, INC. a Washington
   Corporation; and DOES 2 through 50,
19 inclusive,
                        Defendants.
20

21

   Related Case No. CV-11-01996-RS

   **CLASS ACTION**

   **PLAINTIFFS' UNOPPOSED MOTION
   FOR AWARD OF ATTORNEYS'
   FEES, COSTS AND INCENTIVE
   AWARDS; AND MEMORANDUM OF
   POINTS AND AUTHORITIES IN
   SUPPORT THEREOF**

   Date:   August 23, 2012
   Time:   1:30 p.m.
   Ctrm: 3, 17th Floor
   Judge: Hon. Richard Seeborg

   Related Case No.: C 11-03231-RS

22 CHARLEEN SWANEY, an individual; and
   JOSEPH SARASUA, an individual; on
23 behalf of themselves and all others similarly
   situated,
24
                        Plaintiffs,
25 vs.

26 LOWE'S HIW, INC. a Washington
   Corporation; and DOES 2 through 50,
27 inclusive,
                        Defendants.
28

---

1  SUSAN HURTADO, an individual; and on
   behalf of herself and all others similarly
2  situated,                                   Related Case No.: C 11-02193-RS
                        Plaintiffs,
3  vs.
4  LOWE'S HIW, INC. a Washington
   Corporation; and DOES 2 through 50,
5  inclusive,
                        Defendants.
6

7  **TO THE HONORABLE RICHARD SEEBORG:**

8          On May 22, 2012, this Court granted preliminary approval of the Class Action Settlement

9  and ordered Defendant Lowe's to provide notice to the Class, including notice of the requested

10 amount of attorney fees, costs, and plaintiff incentive awards.  The required notice was provided

11 by (1) direct mail, (2) dedicated website, and (3) posted at the point-of-sale in Lowe's stores.  *To*

12 *date, not a single class member has objected to the requested fees, costs, or incentives, or any*

13 *other aspect of the proposed Agreement.*

14         Consistent with the preliminarily approved agreement, Plaintiffs Martin Petersen,

15 Charleen Swaney, Joseph Sarasua and Susan Hurtado now submit this Motion for Award of

16 Attorneys' Fees, Costs, and Incentive Awards.  The requested attorneys' fees, costs, and incentive

17 awards should be finally approved since they are reasonable, are the product of an arms-length

18 settlement negotiation through a neutral third-party mediator, are consistent with established state

19 and federal precedent, and they have been agreed to by Defendant.

20 DATED: July 13, 2012                    STONEBARGER LAW, APC

21

22

23                                         By: /s/ Gene J. Stonebarger
                                               Gene J. Stonebarger
24                                             Attorneys for Plaintiffs and the Class

25

26

27

28

---

**TABLE OF CONTENTS**

I.     INTRODUCTION AND BACKGROUND ........................................................................ 1

II.    LITIGATION AND SETTLEMENT ........................................................................ 1

       A.  The Petersen Action ................................................................................ 1

       B.  The Swaney Action ................................................................................ 2

       C.  The Hurtado Action ................................................................................ 2

       D.  Court's Order Relating the Petersen, Swaney, and Hurtado Actions ........................ 2

       E.  Class Counsel's Investigation and Discovery Efforts .................................... 2

       F.  Mediation Before Michael E. Dickstein ...................................................... 3

       G.  The Settlement Provides Exceptional Benefits For
           The Class Members.................................................................................. 3

III.   LAW AND ARGUMENT ........................................................................ 4

       A.  California Law Governs Class Counsel's Request
           For Attorneys' Fees .............................................................................. 4

       B.  Class Counsels' Requested Fee is Properly Calculated as Percentage
           of the Common Fund Settlement .......................................................... 4

       C.  Class Counsel's Fee Request is Well-Within the Range of What
           Courts Have Approved as a Fair and Reasonable Reflection of the
           Marketplace............................................................................................ 6

       D.  The Gift Cards Being Provided To Class Members Are Fully
           Transferrable, Do Not Expire, And They Are Readily Redeemable
           For Cash ................................................................................................ 8

       E.  Class Counsel's Fee Request Is Also Reasonable Under the
           Lodestar-Multiplier Methodology ........................................................ 9

           1.  State and Federal courts often approve far larger
               multipliers ...................................................................................... 9

           2.  Courts consider numerous factors when considering whether
               to approve a multiplier, all of which support applying a
               multiplier to Class Counsel's base lodestar .................................. 10

a. Class Counsel Faced Novel and Difficult Issues ................................ 10

b. Class Counsel Displayed Exceptional Skill........................................ 11

c. Class Counsel Bore Considerable Risk............................................... 12

d. Class Counsel Conferred Substantial Benefits on
   Settlement Class Members....................................................... 13

F.  The Requested Fees Are Uncontested By the Defendant, And
    Were Agreed To After Arms-Length Negotiations Through A
    Neutral Third-Party Mediator ....................................................... 13

G. Class Counsel's Requested Costs are Reasonable and Appropriate......................... 15

H. Plaintiffs' $5,000 Incentive Fee Requests are Reasonable
   and Standard.......................................................................... 15

    1. Plaintiffs Actively Pursued and Participated in this Case...................... 15

    2. Plaintiffs Undertook Enormous Risk in Initiating and
       Pursuing this Case.......................................................... 16

IV.    CONCLUSION.......................................................................... 17

1

## TABLE OF AUTHORITIES

2

**Federal Cases**

3    *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 S. Ct. L.Ed. 2d 689 (1997) ................................ 14

4    *Arenson v. Board of Trade*, 372 F.Supp. 1349 (N.D. Ill. 1974) ................................................ 9

5    *Boeing Co. v. Van Gemert*, 444 U.S. 472 (1980).................................................................... 5

6    *Boston & Maine Corp. v. Sheehan, Phinney, Bass & Green*, 778 F.2d 890 (1st Cir. 1985) .......... 9

7    *Cosgrove v. Sullivan*, 759 F.Supp. 166 (S.D.N.Y. 1991) ...................................................... 10

8    *Erie R. Co. v. Thompkins*, 304 U.S. 64 (1938) .................................................................... 4

9    *Exxon Mobile Corp. v. Allapatta Services, Inc.*, 545 U.S. 546 (2005) ...................................... 4

10   *Faigman v. AT&T Mobility*, LLC, 2011 WL 672648 (N.D. Cal. Feb. 16, 2011 ........................ 15

11   *Fernandez v. Victoria Secret Stores, LLC*, 2008 U.S. Dist. LEXIS 123546 (C.D. Cal. 2008)... 5, 8

12   *Gezalyan v. BMW of North America, LLC*, 697 F.Supp.2d 1168 (C.D. Cal. 2010) ...................... 4

13   *Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998) .................................................... 14

14   *In Re Activision Sec. Litigation*, 723 F. Supp. 1373 (N.D. Cal. 1989) .................................... 6

15   *Hensley v. Eckerhart*, 461 U.S. 424, 103 S.Ct. 1933 L.Ed. 2d 40 (1983) ................................ 14

16   *Hopkins v. Hanesbrands, Inc.*, 2009 WL 928133 at 10 (N.D. Cal. Apr. 3, 2009) ...................... 15

17   *In re: Beverly Hills Fire Litig.*, 639 F.Supp. 915 (E.D. Ky. 1986)......................................... 9

18   *In re Bluetooth Headset Products Liab. Litig.*, 654 F.3d 935 (9th Cir. 2011)........................... 5,9

19   *In re: Cenco, Inc. Sec. Litig.*, 519 F.Supp. 322 (N.D. Ill. 1981)............................................. 9

20   *In re Continental Illinois Securities Litigation*, 962 F.2d. 566 (7th Cir. 1993)......................... 12

21   *In re: Corrugated Container Antitrust Litig.*
22       1983-2 Trade Cas. (CCH) P 65, 628 (S.D. Tex. 1983) ................................................... 10

23   *In re: Fernald Litig.*,
         No. C-1-85-149, 1989 WL 267038 (W.D. Ohio, September 29, 1989) ................................ 9

24   *In re Genentech*, No. C 88-4038, (N.D. Cal. Feb. 21, 1991) .................................................. 6

25   *In re Pacific Enter. Sec. Litig.* 47 F.3d 373 (9th Cir. 1995) .................................................. 6

26   *In re Rite Aid Corp. Secs. Litig.* 146 F.Supp.2d 706  (E.D. Pa. 2001).................................... 9

27   *M. Berenson Co. v. Faneuil Hall Marketplace, Inc.*, 671 F.Supp. 819 (Mass. 1987) ................. 14

28

*Malchman v. Davis*, 761 F.2d 893 (2d Cir. 1985) ............................................ 14

*Mangold v. California Public Utilities Commission*, 67 F.3d. 1470 (9th Cir. 1995) .................... 4

*Mashburn v. National Healthcare, Inc.*, 684 F. Supp. 679 (M.D. Ala. 1988)........................11

*Merola v. Atlantic Richfield Co.*, 515 F.2d. 165 (3rd Cir. 1975) ...................................... 11

*Muchnick v. First Fed. Savings & Loan Assoc.,*
   Civ. A. No. 86-1104, 1986 WL 17091 (E.D. Pa. September 30, 1986) ................... 10

*Perera v. Chiron Corp.,*Civ. No. 95-20725-SW (N.D. Cal. 1999, 2000)................................ 10

*Rabin v. Concord Assets Group, Inc.,*
   No. 89 CIV. 6130 (LBS), 1991 WL 275757 (S.D.N.Y. 1991) ............................. 9

*Roberts v. Texaco, Inc.*, 979 F.Supp. 185 (S.D.N.Y. 1997)........................................... 9

*Weiss v. Mercedes-Benz of N. Am.,*
   899 F.Supp. 1297 (D.N.J. 1995), *aff'd*, 66 F.3d 314 (3rd Cir. 1995)........................... 10

*Whiteway v. Fedex Kinkos Office & Print Services, Inc.*, (N.D. Cal. 2007)
   2007 U.S. Dist. LEXIS 95398 ........................................................ 16

*Williams v. MGM-Pathe Communications Co.*, 129 F 3d 1026 (9th Cir. 1997) .................... 5,6,7

*Young v. Polo Retail, LLC,* 2007 U.S. Dist. LEXIS 27269 (N.D. Cal. 2007) ........................... 6, 8

**State Cases**

*Consumer Cause, Inc. v. Mrs. Gooch's Natural Food Markets, Inc.,*
   127 Cal.App.4th 387 (2005) .......................................................... 5

*D'Amico v. Board of Medical Examiners*, 11 Cal. 3d 1 (1974) ...................................... 5

*Dunk v. Ford Motor Co.*, 48 Cal.App.4th 1794 (1996) ............................................ 10

*Earley v. Superior Court* 79 Cal.App.4th 1420 (2000)............................................. 15

*Graham v. Daimler Chrysler Corp.*, 34 Cal.4th 553 (2004)........................................ 10

*Ketchum v. Moses*, 24 Cal.4th 1122 (2001) ..................................................... 10

*Lealao v. Beneficial California, Inc,* 82 Cal.App.4th 19 and 48 (2000)............................... 5

*Maria P. v. Riles*, 43 Cal.3d 1281 (1987) ....................................................... 4

*Neary v. Regents of University of California*, 3 Cal.App.4th 273 (1992)............................. 11

*People ex rel. Dept. of Transportation v. Yuki*, 31 Cal. App. 4th 1754 (1995) ...................... 9

*Salton Bay Marina, Inc. v. Imperial Irrigation Dist.*, 172 Cal. App. 3d 914 (1985)................... 9

*Serrano v. Priest*, 20 Cal.3d 25 (1977) ......................................................... 4

*Steiner v. Whittacker Corp.,* CA 000817 (L.A. Super. Ct., March 13, 1989) .................................. 7

*Thayer v. Wells Fargo Bank*, 92 Cal.App.4th 819 (2001), .............................................................. 11

*Wershba v. Apple Computers, Inc.,* 91 Cal.App.4th 224 (2001) ...................................................... 4

*Westside Cmty. for Indep. Living, Inc. v. Obledo,* 33 Cal.3d 348 (1983) ........................................ 4

**Federal Rules**

Fed.R.Civ.P. 23 (h) .......................................................................................................................... 4

TABLE OF AUTHORITIES

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR APPROVAL OF ATTORNEYS' FEES, COSTS AND INCENTIVE FEES

### I.     INTRODUCTION AND BACKGROUND

Through the efforts of Plaintiffs and their counsel consisting of three separate law firms - Stonebarger Law, Patterson Law Group, and Aiman-Smith & Marcy - a common fund settlement was reached that will provide Class Members with a *maximum benefit of $2,900,000.00* and a *minimum benefit of $2,580,000.00*. The majority of the Class Members (those with known addresses) will directly receive the agreed upon benefits without having to make a claim or take any affirmative action whatsoever. Out of pure necessity, the remaining potential Class Members are simply required to identify themselves to receive a benefit. The difference between the minimum and maximum benefit is to account for these claims and any cost over-runs.

From the total fund, and consistent with the preliminarily approved Class Settlement Agreement, plaintiffs seek final approval of the agreed upon (i) $750,000 in attorneys' fees and costs, and (ii) incentive awards in the amount of $5,000 each to Plaintiffs. The agreed upon fees (after costs) constitute approximately 25% of the total benefits being made *available* to the Class, and approximately 28% of the minimum payout. While established Ninth Circuit precedent instructs courts to consider the amount being *made available,* either percentage is well within the range of federal precedent for awarding fees from a common fund. The agreed upon requested incentive awards of $5,000 to the named plaintiffs are likewise well within established precedent for awards in similar cases.

### II.    LITIGATION AND SETTLEMENT

Plaintiffs initially filed three separate cases alleging that Lowe's violated California Civil Code section 1747.08 by requesting and recording personal identification information from credit card customers in its California retail stores.

#### A.     The Petersen Action

On March 11, 2011, Plaintiff Petersen filed the action *Petersen v. Lowe's HIW, INC.,* San Francisco County Superior Court Case No. CGC-11-509122 (the "*Petersen* Action"), alleging that Defendant violated California Civil Code section 1747.08 by requesting and recording

1

PLAINTIFFS' UNOPPOSED MOTION FOR AWARD OF ATTORNEYS' FEES, COSTS, AND INCENTIVE AWARDS; AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

1   Plaintiff Petersen's ZIP code in connection with a credit card transaction.  On April 22, 2011,

2   Defendant removed the *Petersen* Action to the United States District Court for the Northern

3   District of California, and the action was assigned Case No. CV-11-1996-RS.

### B.      The Swaney Action

5          On February 23, 2011, Plaintiff Swaney filed the action titled *Swaney, et al. v. Lowe's*

6   *HIW, Inc.*, Sacramento County Superior Court Case No. 34-2011-00098395 (the "*Swaney*

7   Action"), also alleging that Defendant violated Section 1747.08.  On March 23, 2011, Plaintiffs

8   Swaney and Sarasua filed a First Amended Complaint in the *Swaney* Action.  On April 29, 2011,

9   Defendant removed the *Swaney* Action to the United States District Court for the Eastern District

10  of California.  On June 20, 2011, the action was transferred to the United States District Court

11  for the Northern District of California where it was assigned Case No. C 11-03231-RS.

### C.      The Hurtado Action

13         On March 4, 2011, Plaintiff Hurtado filed the action titled *Hurtado v. Lowe's HIW, INC.*,

14  San Francisco County Superior Court Case No. CGC-11-508816 (the "*Hurtado* Action"),

15  alleging similar Section 1747.08 violations.  On May 4, 2011, Defendant removed the *Hurtado*

16  Action to the United States District Court for the Northern District of California, and the action

17  was assigned Case No. C 11-2193-RS.

### D.      Court's Order Relating the Petersen, Swaney, and Hurtado Actions

19         On July 15, 2011, this Court entered an Order Relating the *Petersen* Action, *Swaney*

20  Action, and the *Hurtado* Action for all purposes, including trial, with the earlier-filed *Petersen*

21  Action denoted as the lead case. [Doc. 26].

### E.      Class Counsel's Investigation and Discovery Efforts

23         Even before filing the underlying three cases, Class Counsel expended substantial efforts

24  investigating defendant's practices and interviewing potential plaintiffs and witnesses.  After

25  initiating the cases, Class Counsel participated in discovery and reviewed substantial information

26  produced by defendant to determine the scope of the potential class and merits of the alleged

27  claims.  Class Counsel researched the law regarding the underlying statute and potential

28

PLAINTIFFS' UNOPPOSED MOTION FOR AWARD OF ATTORNEYS' FEES, COSTS, AND INCENTIVE
AWARDS; AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

exemptions, and considered a number of unique affirmative defenses relating to defendant's collection of information from its customers.

### F.  Mediation Before Michael E. Dickstein

After sufficiently investigating the underlying claims and reviewing the information produced by defendant, the parties conducted an all-day mediation on October 27, 2011 with Michael E. Dickstein, a well-respected class action mediator in the bay area.  For the next few months following the mediation, the parties continued to negotiate the terms of the Settlement Agreement through Mr. Dickstein, and ultimately settled on the proposed terms which were supported, and, in fact, proposed by Mr. Dickstein.

### G.  The Settlement Provides Exceptional Benefits For the Class Members

The Settlement provides meaningful relief to Class Members and will undoubtedly serve as a benchmark for other Section 1747.08 settlements going forward.  The benefits to the Class Members created by the Settlement are apparent on the face of the Agreement.

- Defendant will create a fund providing for a ***total available benefit to the Class of $2,900,000.00*** and a minimum payout of at least $2,580,000.00.

- Each of the Known Class Members (over 175,000 individuals for whom Defendant maintains a name and valid home address), will be directly sent a true Lowe's store gift card in the amount of $9.00.

- Each of the estimated 100,000 Unknown Class Members (those for whom Defendant does not maintain a name and valid home address), may claim a gift card in an amount up to $9.00.

- The gift cards are fully transferrable, do not expire, and can be used to make purchases from Lowes stores without any restrictions whatsoever on the types of merchandise that can be purchased.

- Most importantly, the gift cards may be redeemed for cash by the Class Members, and do not require Class Members to make any purchase or expend any personal funds in order to receive their benefit under the settlement.

PLAINTIFFS' UNOPPOSED MOTION FOR AWARD OF ATTORNEYS' FEES, COSTS, AND INCENTIVE
AWARDS; AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

III.     LAW AND ARGUMENT

    **A.      California Law Governs Class Counsel's Request for Attorneys' Fees**

       At the conclusion of a successful class action, class counsel may apply to the Court for an award of reasonable attorneys' fees.  *See* Fed.R.Civ.P. 23 (h).  The first issue in assessing any fee application is to identify the governing law.  Here, it hardly matters which law is applied since the requested fees and costs are highly reasonable under *both California state law and established federal precedent.*  But for good measure, Plaintiffs recognize that the Court's jurisdiction arises under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), which means the Court is sitting in diversity.  *See Exxon Mobile Corp. v. Allapatta Services, Inc.*, 545 U.S. 546, 571 (2005) ("CAFA confers federal diversity jurisdiction over class actions...").  Pursuant to *Erie R. Co. v. Thompkins*, 304, U.S. 64 (1938), the Court therefore applies California state law in assessing Plaintiffs' fee application, as both the availability of a fee award and the method of calculating that award are considered substantive issues reflecting important state policy.  *See, e.g., Mangold v. California Public Utilities Commission*, 67 F.3d. 1470, 1478 (9th Cir. 1995) ("The method of calculating a fee is an inherent part of the substantive right to the fee itself, and a state right to an attorneys' fee reflects a substantial policy of the state."); *Gezalyan v. BMW of North America, LLC*, 697 F.Supp.2d 1168, 1170 (C.D. Cal. 2010) ("In diversity actions, federal courts look to state law in determining whether a party has a right to attorneys' fees and how to calculate those fees.").

       As such, California substantive law governs.

    **B.      Class Counsels' Requested Fee is Properly Calculated as Percentage of the Common Fund Settlement**

       A fee award is justified where the legal action produces benefits by a voluntary settlement. *Maria P. v. Riles,* 43 Cal.3d 1281, 1290-91 (1987); *Westside Cmty. for Indep. Living, Inc. v. Obledo,* 33 Cal.3d 348, 352-53 (1983).  When the settlement creates a common fund for the class' benefit — as here —attorneys' fees are typically calculated as a percentage of that fund. *See Serrano v. Priest,* 20 Cal.3d 25, 34-35 (1977) ("*Serrano III*"); *Wershba v. Apple Computers, Inc.,* 91 Cal.App.4th 224, 254 (2001).  The California Supreme Court reasoned in *Serrano III*

4

that "'when a number of persons are entitled in common to a specific fund, and an action brought by a plaintiff or plaintiffs for the benefit of all results in the creation or preservation of that fund, such plaintiff or plaintiffs may be awarded attorneys' fees out of the fund.'" Id. at 34 (*quoting D'Amico v. Board of Medical Examiners,* 11 Cal. 3d 1, 25 (1974). The United States Supreme Court expresses the same sentiment in *Boeing Co. v. Van Gemert,* 444 U.S. 472, 478 (1980) ("[A] lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole."). The Ninth Circuit has also held that, although both the "lodestar method" and "percentage-of-recovery method" are both available to district courts, when a settlement produces a common fund for the class, courts primarily employ the percentage-of-recovery method, and award class counsel a fee that constitutes a certain percentage of the fund. *In re Bluetooth Headset Products Liab. Litig.,* 654 F.3d 935, 941-42 (9th Cir. 2011).[1]

The idea behind awarding fees based on a percentage of the benefits is to encourage competent class counsel to take on cases at the risk of not getting paid, and to allow the named plaintiffs and class representatives to recoup their attorneys' fees and costs from the fund, or directly from those who are benefiting from the fund. *Consumer Cause, Inc. v. Mrs. Gooch's Natural Food Markets, Inc.,* 127 Cal.App.4th 387, 397 (2005); *see also, Lealao v. Beneficial California, Inc,* 82 Cal.App.4th 19, 26 and 48 (2000) ("Percentage fees have traditionally been allowed in such common funds cases" (Id. at 26) ... "because the percentage-of-the-benefit approach 'is result-oriented rather than process-oriented, it better approximates the workings of the marketplace' than the lodestar approach..." (*Id.* at 48) (citations omitted).

Federal courts have followed the same approach. *See Williams v. MGM-Pathe Communications Co.,* 129 F 3d 1026 (9th Cir. 1997) (ruling that a district court abused its discretion in basing attorney fee award on percentage of actual distribution to class instead of percentage of total amount being made available to class); *Fernandez v. Victoria Secret Stores, LLC,* 2008 U.S. Dist. LEXIS 123546 (C.D. Cal. 2008) (awarding percentage of class benefits in

---

[1] The *In re Bluetooth* court further explained that the lodestar method is mainly used to compensate class counsel for undertaking socially beneficial litigation when the settlement does not create a common fund for the benefit of the class and in cases where the relief to the class is primarily injunctive in nature. *Id.* at 941.

the form of merchandise certificates); *Young v. Polo Retail, LLC,* 2007 U.S. Dist. LEXIS 27269 (N.D. Cal. 2007) (also awarding percentage of class benefits consisting of merchandise certificates).

Class Counsel has obtained a substantial common fund for the benefit of the Class by which all known Class Members are directly delivered monetary benefits.  Class Counsel are entitled to a percentage of that fund to compensate them for the exceptional results achieved in the face of significant risk and no guarantee of ever being compensated for their time or reimbursed for the costs they invested to prosecute the case.

### C.   Class Counsel's Fee Request is Well-Within the Range of What Courts Have Approved as a Fair and Reasonable Reflection of the Marketplace

After subtracting advanced costs, Class Counsel's requested attorneys' fees represents twenty-five percent (25%) of the total benefits being made available to the Class ($2,900,000), and twenty-eight percent (28%) of the minimum payout required.  Under either calculation, the requested fees are well within the range customarily approved by California federal and state courts.  Federal courts routinely award 30% or more.  *See, e.g. In re Pacific Enter. Sec. Litig.* (9th Cir. 1995) 47 F.3d 373, 379 (33% fee award); *Williams v. MGM-Pathe Communications Co.* (9th Cir. 1997) 129 F.3d 1026, 1027 (33% of total fund awarded); *In re Genentech,* No. C 88-4038, (N.D. Cal. Feb. 21, 1991) (awarding 30% of $29 million settlement fund as fees)(cited in California Class Actions and Coordinated Proceedings (2nd ed. 2010).

In awarding 32.8% of the settlement fund for fees and costs, the Honorable Judge Marilyn Hall Patel explained: "absent extraordinary circumstances that suggest reasons to lower or increase the percentage, the rate should be set at 30%," as this will "encourage plaintiffs' attorneys to move for early settlement, provide predictability for the attorneys and the class members, and reduce the time consumed by counsel and court in dealing with voluminous fee petitions." *In Re Activision Sec. Litigation* (N.D. Cal. 1989) 723 F. Supp. 1373, 1375, 1378-79.

Likewise, in determining the value of the common fund for purposes of awarding fees, the Court should not consider the total monetary amount distributed to the Class; rather, the Court should only consider the amount of the common fund *made available* to the Class.  As

1    articulated in *Young v. Polo Retail, LLC,* 2007 U.S. Dist. LEXIS 27269 (N.D. Cal. 2007), Ninth

2    Circuit precedent requires courts to award class counsel fees based on the total benefits being

3    made available rather than the amount actually paid out. *Id.* at *23 (*citing Williams v. MGM-*

4    *Pathe Communications Co.,* 129 F 3d 1026 (9th Cir. 1997) (ruling that a district court abused its

5    discretion in basing attorney fee award on actual distribution to class instead of amount being

6    made available)); *see also, Fernandez,* 2008 U.S. Dist. LEXIS 123546.

7          California's state courts also frequently award percentage fees of more than 30% of the

8    total fund. *See e.g. Steiner v. Whittacker Corp.,* CA 000817 (L.A. Super. Ct., March 13, 1989)

9    (Reporter's Transcript; cited in California Class Actions and Coordinated Proceedings §15.03])

10   ("35% [fee] certainly is not high compared to the kinds of contingent fee arrangements that the

11   courts see all the time for plaintiffs' litigation."); *Richison v. American Cemwood Corp., et al.,*

12   No. CV 005532 (San Joaquin Super. Ct.) (cited in California Class Actions and Coordinated

13   Proceedings §15.03) (awarding 30% fee of $105 million common fund); *ABS Pipe Cases II,*

14   J.C.C.P. No. 3126 (Contra Costa Super. Ct.) (cited in California Class Actions and Coordinated

15   Proceedings §15.03) (awarding 30% from nine different common funds valued at approximately

16   $77 million).

17         Class Counsel's requested fees are well within the established norms under both state and

18   federal standards.  Although clear Ninth Circuit precedent requires the Court to only consider the

19   total amount being *made available* to the class (as opposed to what is actually paid out), in this

20   case the vast majority of the Class Members will receive a direct payment without having to

21   make a claim.  The $2,580,000 floor constitutes the minimum amount necessary to pay all

22   known Class Members the agreed upon benefits.  The difference between the minimum payout

23   and the total $2,900,000 available fund is to compensate for claims by unknown Class Members

24   and cost over-runs.  Out of pure necessity, unknown Class Members are required to identify

25   themselves by returning a simple claim form.  But this is by no means a typical claims-made

26   settlement where the actual payout is a far cry from the theoretical amount being made available.

27   / / /

28   / / /

**D.    The Gift Cards Being Provided To Class Members Are Fully Transferrable, Do Not Expire, And They Are Readily Redeemable For Cash**

The Court should not apply any discount to the total value of the Settlement based on the fact that Class Members are receiving shares from the fund in the form of gift cards.  The gift cards are fully transferrable, they do not expire, and they are as good as cash.  Indeed, under California law Class Members are free to redeem them for cash at any Lowe's store.  California Civil Code Section 1749.5(b)(2) states that "any gift certificate with a cash value of less than ten dollars ($10) is redeemable in cash for its cash value." Because the gift cards are the functional equivalent of cash, and can be readily redeemed for cash, no discount to the value of the common fund should be made.

Even if the Court were inclined to apply a discount, however, the requested fee should still be approved as it is in-line with direct federal authority.  Specifically, in *Fernandez v. Victoria Secret Stores, LLC*, 2008 U.S. Dist. LEXIS 123546 (C.D. Cal. 2008) and *Young v. Polo Retail, LLC*, 2007 U.S. Dist. LEXIS 27269 (N.D. Cal. 2007), two different federal courts awarded fees based on the percentage-of-the-benefits where the class was compensated in merchandise certificates.  In *Fernandez*, the court found it necessary to discount the value of the merchandise certificates (for the purposes of awarding attorneys' fees) by fifteen percent based on the projected resale value of the merchandise certificates on the open market. *Id.* at 38-40. Nevertheless, the *Fernandez* Court awarded class counsel $2.89 million in attorney fees, which constituted 34% of the total *made available* under the pure claims made settlement in that case.[2] The *Young* Court applied a similar discount and awarded fees constituting 31% of the total fund based on the discounted value of the merchandise certificates provided to the class in that case. *Young*, 2007 U.S. Dist. LEXIS at *22, 28.

Because the Lowe's gift cards are fully redeemable for cash, no similar discount to the value of the common fund should be applied.  But even if the Court were to apply the same 15%

---

[2] In the *Fernandez* case, all class members were required to return a claim form to receive a gift card.  As a result, far less than the maximum benefit fund was paid out.  By contrast, the majority of the Class Members in this case will receive a direct benefit without having to make any claim, and only the unidentified Class Members will (out of necessity) need to identify themselves and submit a claim form. The *Fernandez* case is attached as Exhibit 'B' to the Stonebarger Decl. for this Court's ease of reference.

1   discount to the gift card portion of the fund, the total value of the settlement would still be

2   $2,615,670, and the requested fees would still only constitute 28% of the total value, which is

3   consistent with, and in fact less than what was awarded in *Fernandez* and *Young*.[3]

4          **E.**     **Class Counsel's Fee Request Is Also Reasonable Under the Lodestar-**

5                  **Multiplier Methodology**

6          Some courts confirm the propriety of a percentage fee award by using the lodestar-

7   multiplier method as a cross-check against the reasonableness of the percentage fee award. *See,*

8   *e.g.*, *Serrano III*, 20 Cal.3d 25, 48 fn. 23; *People ex rel. Dept. of Transportation v. Yuki,* 31 Cal.

9   App. 4th 1754, 1769-1772 (1995); *Salton Bay Marina, Inc. v. Imperial Irrigation Dist.,* 172 Cal.

10   App. 3d 914, 954 (1985); *see also In re Bluetooth Headset Products Liab. Litig.*, 654 F.3d at

11   941-42.  The lodestar-multiplier method begins with a calculation of time spent and reasonable

12   hourly compensation of each attorney and paralegal who worked on the case.  Then to

13   compensate counsel for risk, quality, and result, courts commonly apply a "multiplier" to the

14   lodestar in awarding attorneys' fees.  Under that method, Class Counsel seeks only a 1.69

15   multiplier over their combined base lodestar of $444,011.40.  Declaration of Gene J. Stonebarger

16   in Support of Motion for Attorneys' Fees, Costs, and Incentive Awards ("Stonebarger Decl.") at

17   ¶6; Declaration of Reed W.L. Marcy in Support of Plaintiffs' Unopposed Motion for Award of

18   Attorney's Fees, Costs and Incentive Awards ("Marcy Decl.") at ¶8, 12, 14 and 15; Declaration

19   of James R. Patterson in Support of Motion for Attorneys' Fees, Costs, and Incentive Awards

20   ("Patterson Decl.") at ¶6.

21            **1.**     ***State and federal courts often approve far larger multipliers***

22          California state courts frequently award substantial multipliers to account for the risks

23   Class Counsel takes and the inherent uncertainty in contingency fee arrangements.  Likewise,

24   federal courts often grant multipliers of four or more.[4]

---

25   [3] It bears noting that the *Fernandez* and *Young* courts only applied the discount to the portion of the fund being

26   provided to class members in the form of merchandise certificates, and not to the total value of the fund, which would include fees, costs, and administration costs being paid in cash.

27   [4] *See, e.g.*, *Arenson v. Board of Trade*, 372 F.Supp. 1349 (N.D. Ill. 1974) (approving multiplier of 4 in an antitrust class action); *In re: Corrugated Container Antitrust Litig.*, 1983-2 Trade Cas. (CCH) P 65, 628 (S.D. Tex. 1983) (approving multiplier of 4; cited in California Class Actions and Coordinated Proceedings, §15.05); *In re: Cenco,*

28   *Inc. Sec. Litig.*, 519 F.Supp. 322 (N.D. Ill. 1981) (approving multiplier of 4 in securities class action); *Rabin v.*

1    **2.    Courts consider numerous factors when considering whether to approve
     a multiplier, all of which support applying a multiplier to Class
2    Counsel's base lodestar**

3          California courts often consider several factors, if relevant, when determining whether to

4    adjust the base lodestar amount by applying a multiplier: (i) the time and labor required by the

5    Class Counsel; (ii) the fee agreement's contingent nature, both from the viewpoint of eventual

6    victory on the merits and the viewpoint of establishing eligibility for an award; (iii) the extent to

7    which the nature of the litigation precluded other employment by the attorney; (iv) the novelty or

8    difficulty of the questions involved, and the skill displayed in presenting them; (v) the

9    experience, reputation, and ability of the attorneys who performed the services; (vi) the amount

10   involved and the results obtained; and (vii) the client's informed consent to the fee agreement.[5]

11         In this case, Class Counsel is seeking a multiplier of only 1.69[6] to Class Counsel's current

12   lodestar figure – equaling a total award of attorneys' fees and costs of $750,000. The amount of

13   this multiplier will be reduced due to the additional work to be completed by Class Counsel

14   through the completion of this case.  A multiplier in this case is certainly warranted as each of

15   the aforementioned factors have been satisfied by Class Counsel.

16         ***a.    Class Counsel Faced Novel and Difficult Issues***

17         This action presented novel and difficult questions regarding liability under California

18   Civil Code section 1747.08.  Plaintiffs contend that Defendant violated California Civil Code

19   section 1747.08 by requesting and recording its customers' personal identification information,

20   *Concord Assets Group, Inc.*, No. 89 CIV. 6130 (LBS), 1991 WL 275757 (S.D.N.Y. 1991) (approving multiplier of
21   4.4 in securities class action); *In re Rite Aid Corp. Secs. Litig.*, 146 F.Supp.2d 706, 736 n. 44 (E.D. Pa. 2001)
     (approving multiplier of 4.5-8.5); *Municipal Auth. v. Pennsylvania*, 527 F.Supp. 982 (M.D. Pa. 1981) (approving
22   multiplier of 4.5); *In re: Beverly Hills Fire Litig.*, 639 F.Supp. 915 (E.D. Ky. 1986) (approving multiplier of up to
     5); *In re: Fernald Litig.*, No. C-1-85-149, 1989 WL 267038 (W.D. Ohio, September 29, 1989) (approving multiplier
23   of 5 in toxic tort class action; *Roberts v. Texaco, Inc.*, 979 F.Supp. 185 (S.D.N.Y. 1997) (approving multiplier of
     5.5); *Boston & Maine Corp. v. Sheehan, Phinney, Bass & Green*, 778 F.2d 890 (1st Cir. 1985) (approving multiplier
24   of 6); *Muchnick v. First Fed. Savings & Loan Assoc.*, Civ. A. No. 86-1104, 1986 WL 17091 (E.D. Pa. September
     30, 1986) (approving multiplier of 8 in a consumer class action); *Cosgrove v. Sullivan*, 759 F.Supp. 166 (S.D.N.Y.
25   1991) (approving multiplier of 8.84); *Perera v. Chiron Corp.*, Civ. No. 95-20725-SW (N.D. Cal. 1999, 2000)
     (approving multiplier of 9.14; cited in California Class Actions and Coordinated Proceedings §15.05); *Weiss v.
26   Mercedes-Benz of N. Am.*, 899 F.Supp. 1297 (D.N.J. 1995), *aff'd*, 66 F.3d 314 (3rd Cir. 1995) (approving multiplier
     of 9.3 in products liability class action).
27   [5] *Serrano v. Priest*, 20 Cal.3d 25, 49 (1977); *Dunk v. Ford Motor Co.*, 48 Cal.App.4th 1794, 1810 n. 21 (1996);
     *Glendora*, 155 Cal.App.3d at 474 (1984); *Ketchum v. Moses*, 24 Cal.4th 1122, 1132 (2001); *Graham v. Daimler
28   Chrysler Corp.* 34 Cal.4th 553, 579-580 (2004).
     [6] $750,000.00 ÷ $444,011.40 = 1.69.

10

**PLAINTIFFS' UNOPPOSED MOTION FOR AWARD OF ATTORNEYS' FEES, COSTS, AND INCENTIVE
AWARDS; AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

1   specifically their ZIP codes, in conjunction with credit card transactions.  Defendant, on the other

2   hand, asserted that its actions were in accord with the provisions of California Civil Code section

3   1747.08, including the stated exceptions provided in the statute.  Defendant further claimed that

4   class certification would be difficult for Plaintiffs because they would be unable to demonstrate

5   typicality, ascertainability, preponderance, or superiority.  Finally, Defendant contended that,

6   even if its actions did violate California Civil Code section 1747.08, no penalties should be

7   awarded because any violations were merely technical, they took steps to safeguard the

8   information they gathered, and its customers benefited from its collection of the data.  These

9   novel and difficult questions were matters of first impression that created uncertainty as to

10  Defendant's liability under section 1747.08.

11              *b.*      ***Class Counsel Displayed Exceptional Skill***

12              As stated above, this case presented novel and difficult issues, and Defendant was

13  represented by skilled and able counsel.  Nevertheless, an outstanding settlement was achieved.

14  In some respects, the time that Class Counsel opted <u>not</u> to expend is equally important in

15  deciding the proper amount of the multiplier. "One thousand plodding hours may be far less

16  productive than one imaginative, brilliant hour." *Mashburn v. National Healthcare, Inc.*, 684 F.

17  Supp. 679, 689 (M.D. Ala. 1988) (*quoting* Hornstein, Legal Therapeutics: The "Salvage" Factor

18  in Counsel Fee Awards, 69 HARV.L.REV. 658 (1956)). Many courts have recognized that class

19  counsel should be rewarded for their efficiency (and the concomitant savings to the judicial

20  system) by application of a multiplier.  Unless multipliers are awarded, there will be "a

21  disincentive to settle promptly inherent in the lodestar methodology.  Considering that our

22  Supreme Court has placed an extraordinarily high value on settlement . . . it would seem counsel

23  should be rewarded, not punished, for helping to achieve that goal, as in federal courts." *Lealao*,

24  82 Cal.App.4th at 52 (*citing Neary v. Regents of University of California*, 3 Cal.App.4th 273,

25  277-80) (1992); *see also Merola v. Atlantic Richfield Co.*, 515 F.2d. 165, 168 (3rd Cir. 1975)

26  (lodestar-multiplier approach "permits the court to recognize and reward achievements of a

27  particularly resourceful attorney who secures a substantial benefit for his clients with a minimum

28

of time invested").  Similarly, in *Thayer v. Wells Fargo Bank*, 92 Cal.App.4th 819 (2001), the Court noted that "[t]he California cases appear to incorporate the 'results obtained' factor into the 'quality' factor: i.e., high-quality work may produce greater results in less time than would work of average quality, thus justifying a multiplier." *Id.*

This action was settled promptly and without a needless waste of judicial resources. Class Counsel could have insisted on continuing this action to increase its lodestar; however, finding that the settlement was fair and reasonable, Class Counsel opted to settle this matter.  In accordance with California law, Class Counsel should be rewarded, not punished, for their skillful representation and efficiency.

### c.    *Class Counsel Bore Considerable Risk*

Application of a multiplier would also be warranted by the risks Class Counsel bore in prosecuting this case.  *See Serrano*, 20 Cal.3d. at 49 (listing contingent risk and foregone employment opportunities as factors to be considered in lodestar multipliers).  As the California Supreme Court has explained:

> A contingent fee must be higher than a fee for the same legal services paid as they are performed. The contingent fee compensates the lawyer not only for the legal services he renders but for the loan of those services. The implicit interest rate on such a loan is higher because the risk of default (the loss of the case, which cancels the debt of the client to the lawyer) is much higher than that of conventional loans.  A lawyer who both bears the risk of not being paid and provides legal services is not receiving the fair market value of his work if he is paid only for the second of these functions. If he is paid no more, competent counsel will be reluctant to accept fee award cases.

*Ketchum*, 24 Cal.4th at 1132-33.

In the case of *In re Continental Illinois Securities Litigation*, 962 F.2d. 566 (7th Cir. 1993), a federal appellate court reversed a fee award in a class action for, among other things, the trial court's refusal to enhance class counsel's lodestar for contingency risk.  "The judge refused to award a risk multiplier--that is, to give the lawyers more than their ordinary billing rates in order to reflect the risky character of their undertaking.  This was error in a case in which the lawyers had no sure source of compensation for their services." *Id.* at 569.  "[T]he failure to make any provision for risk of loss may result in systematic undercompensation of Class Counsel in a class action case, where as we have said the only fee that counsel can obtain is, in the nature

**PLAINTIFFS' UNOPPOSED MOTION FOR AWARD OF ATTORNEYS' FEES, COSTS, AND INCENTIVE AWARDS; AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

1     of the case, a contingent one." *Id.*

2         Throughout this action, Class Counsel has expended a substantial amount of time and

3 advanced costs to prosecute a statewide class action suit with no guarantee of compensation or

4 reimbursement in the hope of prevailing against a large, sophisticated company represented by

5 first-rate attorneys. *See* Stonebarger Decl. at ¶5; Patterson Decl. at ¶5; and Marcy Decl. at ¶¶8

6 and 14. Class Counsel prosecuted the case with the type of vigor and skill required to ensure

7 justice for the Class while simultaneously refusing alternative employment opportunities with

8 higher likelihoods of success and guarantees of fee payment. *Id.* This fact alone supports a

9 finding that Class Counsel is entitled to a multiplier.

10
11

          ***d.    Class Counsel Conferred Substantial Benefits on***
                ***Settlement Class Members***

12         Class Counsel achieved an excellent settlement in this action and realized Plaintiffs'

13 ultimate goals to: (i) change Defendant's business practices to comply with California Civil Code

14 §1747.08; and (ii) receive compensation for the risks to which Defendant's business practices

15 exposed them. The settlement ensures that future customers who engage in a credit card

16 transaction at any of Defendant's California retail stores will not be requested to provide personal

17 identification as part of that transaction. Further, the majority of the Class will be directly mailed

18 gift cards that are the equivalent of, and can be redeemed for cash. This is a tremendous result

19 that is already becoming recognized as one of the most favorable settlements ever reached in a

20 Section 1747.08 case.

21
22

    **F.   The Requested Fees  Are Uncontested By the Defendant, And Were Agreed To**
        **After Arms-Length Negotiations Through A Neutral Third-Party Mediator**

23         Of great importance is the fact that the amount of fees and costs is uncontested. The

24 Class Members were mailed direct notice of the proposed settlement, notice was posted at the

25 point of sale in Defendant's stores, and the full notice was posted on a dedicated settlement

26 website, including the proposed amount of attorney fees (which the Court directed the parties to

27 include in the notice). To date, no one has objected.

28     / / /

13

1      The requested fees resulted from an arms-length negotiation through the mediator, and

2   Defendant agrees that the fees are reasonable.  Courts generally encourage the parties to

3   negotiate and agree to fees in order to avoid the costly and time consuming process of applying

4   to the court.  In such cases, and assuming there is no evidence of collusion, the agreed upon fees

5   should be given a presumption of fairness.  As explained by the court in *DeHoyos vs. Allstate*

6   *Corp.*, 240 F.R.D. 269, 322 (W.D. Tx. 2007):

7          An agreed upon award of attorneys' fees and expenses is proper in a class action
       settlement, so long as the amount of the fee is reasonable under the circumstances.
8       *See Fed. R. Civ. P.* 23(h) (providing that 'an action certified as a class action, the
       court may award reasonable attorney fees and nontaxable costs authorized by …
9       agreement of the parties ….').  In fact, courts have encouraged litigants to resolve
       fee issues by agreement, if possible. *Lobatz U.S. W. Cellular, Inc.*, 222 F.3d 1142,
10      1149-50 (2d Cir., 2000) (affirming reasonable award of fees and expenses to be
       paid separate from class action settlement where defendant agreed not to oppose
11      request up to negotiated amount); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029
       (9th Cir. 1998) (upholding district court's award of attorneys' fees where Court
12      had approved attorneys' fees and costs of $5.2 million which were after final
       settlement was achieved); *Malchman v. Davis*, 761 F.2d 893, 905 n.5 (2d Cir.
13      1985) (recognizing '[a]n agreement "not to oppose" an application for fees up to a
       point is essential to completion of the settlement; because the defendants want to
14      know their total maximum exposure and the plaintiffs do not want to be-
       sandbagged'), *cert. denied*, 475 U.S. 1143, 106 S. Ct. 1798, 90 L. Ed. 2d 343
15      (1986), *abrogated on other grounds sub nom Amchem Prods., Inc. v. Windsor*,
       521 U.S. 591, 614, 117, S. Ct. 2231, 138 L.Ed. 2d 689 (1997); *M. Berenson Co. v.*
16      *Faneuil Hall Marketplace, Inc.*, 671 F.Supp. 819, 829 (Mass. 1987) (concluding
       that '[W]hether a defendant is required by statute or agrees as part of the
17      settlement of a class action to pay the plaintiffs' attorneys' fees, ideally the parties
       will settle the amount of the fee between themselves').  As the United States
18      Supreme Court has explained, a request for attorney's fees should not result in a
       second major litigation. *Hensley v. Eckerhart*, 461 U.S. 424, 437, 103 S.Ct. 1933,
19      76 L.Ed. 2d 40 (1983).  'Ideally, of course,' the Court continued, 'litigants will
       settle the amount of, a fee.' Id.  [Other citations omitted.]
20

21  The agreed upon fees here were a compromise reached at arms-length.  Each side gave up the

22  possibility of the court awarding more, or less, in agreeing to the proposed amount.  This

23  agreement should not be disturbed absent some reason to believe there was collusion (there was

24  not), or a determination that the proposed amount is beyond what is considered within the range

25  of reasonableness (it is not).

26  / / /

27  / / /

28  / / /

**PLAINTIFFS' UNOPPOSED MOTION FOR AWARD OF ATTORNEYS' FEES, COSTS, AND INCENTIVE
AWARDS; AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

### G.     Class Counsel's Requested Costs are Reasonable and Appropriate

Class Counsel incurred reasonable litigation costs in bringing this matter to a resolution before trial. Class Counsel's out-of-pocket costs to date are $14,786.40 and will exceed $15,000 by the conclusion of this case. *See* Stonebarger Decl. at ¶6, Patterson Decl. at ¶6; and Marcy Decl. at ¶15.

### H.     Plaintiffs' $5,000 Incentive Fee Requests are Reasonable and Standard

Plaintiffs each request a $5,000 incentive payment to compensate them for their services as court appointed class representatives.  The named Plaintiffs put the Class Members interests ahead of their own by pursuing this case and obtaining substantial benefits for the Class. As stated by the Court of Appeal in the *Cellphone Termination Fee Cases*, 186 Cal.App.4th 1380 (2010): incentive awards are "intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general.'" Incentive awards "are fairly typical in class action cases." *Id*. at 1394. California Federal Courts have found that "incentive payments of $5,000 are presumptively reasonable." *See Faigman v. AT&T Mobility,* LLC, 2011 WL 672648 at *5 (N.D. Cal. Feb. 16, 2011); *see also Hopkins v. Hanesbrands, Inc.,* 2009 WL 928133 at 10 (N.D. Cal. Apr. 3, 2009).

The parties agree that Plaintiffs' requested incentive fees are reasonable because they each dedicated a significant amount of time and effort in bringing this case forward and litigating this case, actively participating in this lawsuit, undertaking significant risks, and achieving substantial class benefits.  The mediator endorsed the requested incentive awards to each Plaintiff as fair and reasonable in light of the Plaintiffs' involvement, personal sacrifices, and achieved results.  Stonebarger Decl. at ¶4; Patterson Decl. at ¶4; and Marcy Decl. at ¶16.

#### 1.     *Plaintiffs Actively Pursued and Participated in this Case*

After initiating the lawsuit, Plaintiffs actively participated in litigation.  For instance, each spent a substantial amount of time participating in interviews, meetings and telephone consultations with Class Counsel who required considerable information pertaining to their transactions at Defendant's retail stores. *Id.*  Plaintiffs also spent numerous hours gathering

information in support of their claims and responding to inquiries from Class counsel. Plaintiffs

efforts helped Class Counsel prepare the complaint, for mediation, the anticipated certification

motion, and the briefing relating to the approval of the settlement. *Id.*

### 2. *Plaintiffs Undertook Enormous Risk in Initiating and Pursuing this Case*

Plaintiffs risked potential judgment against them if this case had been unsuccessful.  In

class action losses, class representatives are deemed the losing party that is liable for the

prevailing party's costs. *Earley v. Superior Court* (2000) 79 Cal.App.4th 1420, 1433-1434.   Few

individuals are willing to undertake that risk, particularly since courts have recently been

entering judgments against class representatives. *See  e.g. Whiteway v. Fedex Kinkos Office &*

*Print Services, Inc.*, (N.D. Cal. 2007) 2007 U.S. Dist. LEXIS 95398 (a wage and hour

misclassification case lost on summary judgment, after the case was certified, the named plaintiff

was assessed costs in the sum of $56,788).  In fact, the *Whiteway* court summed up the

substantial risks associated with agreeing to act as a class representative:

> '[T]he class representatives' dilemma – they must balance the risk of liability
> against their potential recovery . . . . While imposition of the entire cost burden on
> the named plaintiffs may have a chilling effect on the willingness of plaintiffs to
> bring class action suits, this effect easily may be outweighed by the potential
> recovery.  All potential litigants must weigh costs of suit against likelihood of
> success and possible recovery before deciding to file suit.  Those who choose to
> take the risks of litigation should be the ones to bear the costs when they are
> unsuccessful [citation omitted].  *Whiteway, supra*, at *6.

The risk of having to cover defense costs, alone, is sufficient to support incentive awards

of $5,000 each.

/ / /

/ / /

/ / /

/ / /

/ / /

**PLAINTIFFS' UNOPPOSED MOTION FOR AWARD OF ATTORNEYS' FEES, COSTS, AND INCENTIVE**
**AWARDS; AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

1  **IV.  CONCLUSION**

2          Class Counsel's request for an award of attorneys' fees and costs in the amount of

3  $750,000 is reasonable and justified considering the superb settlement secured for members of

4  the Class. Class Counsels' requested fees follow California's benchmark rate of the common

5  fund, and current fee awards.  Further, the incentive awards of $5,000.00 to each Class

6  representative are fair and reasonable. Accordingly, Class Counsel respectfully requests that this

7  Court award the requested fees, costs and incentive awards.

8  Dated:  July 13, 2012                              Respectfully submitted,

9                                                      STONEBARGER LAW, APC

10

11                                                     By:  /s/ Gene J. Stonebarger
12                                                          Gene J. Stonebarger
                                                            Richard D. Lambert

13                                                     *Attorneys for Plaintiffs Charleen Swaney*
14                                                     *and Joseph Sarasua*

15                                                     James R. Patterson
16                                                     PATTERSON LAW GROUP, APC

17                                                     *Attorney for Plaintiff Martin Peterson*

18                                                     Randall B. Aiman-Smith
                                                       Reed W.L. Marcy
19                                                     Hallie Von Rock
                                                       AIMAN-SMITH & MARCY

20                                                     *Attorneys for Plaintiff Susan Hurtado*

21

22

23

24

25

26

27

28

                                                  17