**United States District Court**
For the Northern District of California

1

2

3

4

5 IN THE UNITED STATES DISTRICT COURT

6 FOR THE NORTHERN DISTRICT OF CALIFORNIA

7 SAN FRANCISCO DIVISION

8

9 MARTIN PETERSEN, an individual, on             No. C 11-01996 RS
behalf of himself and all others similarly      No. C 11-03231 RS
10 situated,                                      No. C 11-02193 RS

11         Plaintiff,                            **ORDER GRANTING UNOPPOSED
                                                 MOTION FOR AWARD OF
12     v.                                        ATTORNEYS' FEES, COSTS AND
                                                 INCENTIVE AWARDS**
13 LOWE'S HIW, INC., a Washington
Corporation; and DOES 2 through 50,
14 inclusive,

15         Defendant.
                                            /
16

17 AND RELATED CASES
                                            /
18

19                          I. INTRODUCTION

20      In connection with a proposed class action settlement resolving these related putative

21 consumer class actions, plaintiffs' counsel move, unopposed, for an award of attorneys' fees, costs,

22 and incentive payments for the named plaintiffs. The Court granted final approval of the proposed

23 settlement by separate order this same day. In consideration of plaintiffs' brief, the arguments

24 raised at the hearing, and for all the reasons set forth below, the request for incentive payments is

25 granted, and the motion for an award of attorneys' fees and costs is also granted, in the amount of

26 $640,000.

27                          II. BACKGROUND

28
                                                              No. C 11-01996 RS
                                                              AND RELATED CASES
                                                              ORDER

**United States District Court**
For the Northern District of California

1    The settlement agreement reached by the parties in this matter resolves plaintiffs' claims that

2  defendant Lowe's illegally collected California consumers' ZIP codes in connection with credit card

3  transactions. California law prohibits businesses from requesting or recording personal

4  identification information from credit card consumers as a condition of the transaction. Cal. Civ.

5  Code § 1747.08. Civil penalties are mandatory, but the amount to be awarded is discretionary.

6  California Civil Code § 1747.08(e) provides that a violator "shall be liable for *up to* $250.00 for the

7  first violation and *up to* $1,000.00 for each subsequent violation" (emphasis added). *But see The*

8  *TJX Companies, Inc. v. Superior Court*, 163 Cal. App. 4th 80, 86-87 (2008) ("peppercorn" would

9  suffice). Under subsection (b) of § 1747.08, personal identification information "means information

10  concerning the cardholder, other than information set forth on the credit card, and including, but not

11  limited to, the cardholder's address and telephone number." On February 10, 2011, the California

12  Supreme Court issued a unanimous decision that ZIP codes are personal identification information

13  under § 1747.08. *Pineda v. Williams-Sonoma Stores, Inc.*, 51 Cal. 4th 524 (2011) (overruling *Party*

14  *City Corp. v. Superior Court*, 168 Cal. App. 4th 497 (2008)).

15    Within weeks of the issuance of *Pineda*, plaintiffs filed three separate suits alleging Lowe's

16  illegally requested and recorded customers' ZIP codes at the point of sale in retail locations. These

17  actions were originally filed in the Superior Courts, removed (one case was also transferred), and

18  ultimately related before this Court for all purposes. After informal discovery concerning the scope

19  of the class, the number of transactions at issue, and the merits of the claims, the parties engaged in

20  mediation before a class action mediator, and eventually settled.

21    The final settlement binds a class of individuals who used a credit card issued for consumer

22  credit purposes to make purchases from one of Lowe's retail stores in California from February 23,

23  2010 to May 22, 2012 and whose ZIP code was requested and recorded by Lowe's (other than for

24  special order, installation, or delivery). There were no objections, and only 18 individual class

25  members opted out of the settlement. The agreement creates a common fund with a maximum gross

26  settlement amount of $2.9 million, out of which all fees and expenses will be paid, including

27  attorneys' fees and costs, an estimated $177,000 of administration costs, and incentive payments of

28  $5,000 for each of four named class representatives. The net settlement amount, which is available

United States District Court

For the Northern District of California

1  to be distributed to the class of 173,391 known class members and 815 "unknown" class members,

2  provides each with a $9 Lowe's gift card which is redeemable for cash, transferrable, and will not

3  expire.[1]  In all, then, 174,206 class members will receive $9 gift cards, for a total benefit of

4  $1,567,854.  Lowe's will therefore be required to pay out $2,404,854, inclusive of class benefits,

5  attorneys' fees and costs, class representative incentive payments, and administrative costs.

6  Because the settlement also requires a minimum total payout of $2,580,000, the shortfall of

7  $175,146 will be paid in *cy pres* awards to the Consumer Federation of California and the Privacy

8  Rights Clearinghouse.

9  II. DISCUSSION

10 A. Attorneys' fees and costs

11 Jurisdiction over this diversity case is provided by the Class Action Fairness Act, 28 U.S.C.

12 § 1332(d).  The availability and amount of the fee award are considered substantive issues of state

13 law for *Erie* purposes.  *Vizcaino v. Microsoft Corp.,* 290 F.3d 1043, 1047 (9th Cir. 2002); *Mangold*

14 *v. Cal. Pub. Util. Comm'n*, 67 F.3d 1470, 1478 (9th Cir. 1995).  In common fund cases, under state

15 and federal law, the courts possess the "discretion to apply either a lodestar method or the

16 percentage-of-the-fund method in calculating a fee award." *Fischel v. Equitable Life. Assur. Society*

17 *of U.S.*, 307 F.3d 997, 1006 (9th Cir. 2002) (citing *Vizcaino*, 290 F.3d at 1047); *In re Consumer*

18 *Privacy Cases*, 175 Cal. App. 4th 545, 558 (2009).  "[T]he choice between lodestar and percentage

19 calculation depends on the circumstances." *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d

20 1291, 1296 (9th Cir. 1994) (citing *Six (6) Mexican Workers v. Arizona Citrus Growers*, 904 F.2d

21 1301, 1311 (9th Cir. 1990)).

22 The lodestar is calculated by multiplying the number of hours the prevailing party's

23 attorneys reasonably expended on the litigation by a reasonable hourly rate, given the local market

24 for legal services and the relative experience of counsel. *In re Bluetooth Headset Prods. Liab.*

25

26 [1] The known class members comprise those for whom Lowe's collected and retained a name and valid mailing address.  Post card notices were sent to 175,059 known class members.  Of those,

27 1,668 were returned as undeliverable, without a forwarding address, and no other address could be located by the claims administrator.  All others were delivered.  The "unknown" class members did

28 not have a name and address on file with Lowe's.  They received notice by "tear-away" cards posted at most sales registers in all California Lowe's stores, which were available from June 12 to July 13, 2012.

**United States District Court**
For the Northern District of California

1    *Litig.*, 654 F.3d 935, 941 (9th Cir. 2011). The lodestar figure itself is "presumptively reasonable,"

2    *see Cunningham v. Cnty of Los Angeles*, 879 F.2d 481, 488 (9th Cir. 1988), but may be adjusted

3    with a positive or negative multiplier that reflects "the benefit obtained for the class," *see Hensley v.*

4    *Eckerhart*, 461 U.S. 424, 434-36 (1983), as well as "the quality of representation, the benefit

5    obtained for the class, the complexity and novelty of the issues presented, and the risk of

6    nonpayment." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998) (citing *Kerr v.*

7    *Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975)).

8         In common fund cases, however, attorneys' fees and costs are more often determined as a

9    percentage of the fund, and then cross-checked against the lodestar amount to ensure the

10   reasonableness of the award. *Id.*at 942 ("Because the benefit to the class is easily quantified in

11   common-fund settlements, we have allowed courts to award attorneys a percentage of the common

12   fund in lieu of the often more time-consuming task of calculating the lodestar."). In the Ninth

13   Circuit, the benchmark for percentage-of-recovery awards is ordinarily 25%. *Six (6) Mexican*

14   *Workers*, 904 F.2d at 1311. Plaintiffs' counsel stresses that if the percentage approach is employed,

15   the Court must assess the award against the entire common fund made available to the class, rather

16   than the actual recovery of class members. *See Williams v. MGM-Pathe Commc'n Co.*, 129 F.3d

17   1026, 1027 (9th Cir. 1997) ("We conclude that the district court abused its discretion by basing the

18   fee on the class members' claims against the fund rather than on a percentage of the entire fund or

19   on the lodestar."). The rule is such because, at least in theory, funds used to compensate plaintiffs'

20   counsel are part of the class' larger recovery, and could be directed to other purposes.

21        That said, "a percentage award 'should be adjusted, or replaced ... when special

22   circumstances indicate that the percentage recovery would be either too small or too large in light of

23   the hours devoted to the case or other relevant factors.'" *In re Wash. Pub. Power*, 19 F.3d at 1296

24   (citing *Six (6) Mexican Workers*, 904 F.2d at 1311)). Ultimately, "[r]egardless of whether attorneys'

25   fees are determined using the lodestar method or awarded based on a percentage-of-the-benefit

26   analysis under the common fund doctrine, [t]he ultimate goal ... is the award of a reasonable fee to

27   compensate counsel for their efforts, irrespective of the method of calculation." *In re Consumer*

28

**United States District Court**
For the Northern District of California

*Privacy Cases*, 175 Cal. App. 4th at 558 (internal citations and quotation marks omitted).  *See also In re Bluetooth*, 654 F.3d at 942.

In this instance, plaintiffs' counsel request an award of $750,000, which constitutes 25.9% of the total funds made available to the class ($2.9 million), or equivalently, 29.0% of the funds actually paid by Lowe's ($2.58 million), given the low response rate from unknown class members. Under *Williams*, it is the former figure that is legally significant and which guides the analysis, rather than the latter.[2]  Plaintiffs' counsel emphasizes that state and federal courts in California have, on numerous occasions, approved fee requests of similar proportions.  That is unquestionably true, and as an initial matter, there is no reason to doubt the reasonableness of the hours counsel spent litigating this matter, the quality of the representation provided, or the fine result achieved for the class.  According to plaintiffs' counsel, to date, this settlement represents the only monetary recovery achieved on behalf of a class under § 1747.08, and that is certainly significant.

At the same time, these cases are not relatively complex.  The facts are less complicated than those presented by many consumer class actions.  As for the legal issues involved, these cases were filed almost immediately after the California Supreme Court handed down *Pineda*, and the class claims encompass Lowe's collection of ZIP codes after that case clarified the law.  Accordingly, there is relatively little legal uncertainty as to whether § 1747.08 creates liability for the collection of ZIP codes, at least for purposes of the post-*Pineda* portion of the class period.  Plaintiffs' counsel noted, at oral argument, that a number of § 1747.08 cases brought after *Pineda* have, nonetheless, been resolved against plaintiff.  *See, e.g., Gass v. Best Buy Co., Inc.*, 279 F.R.D. 561 (C.D. Cal. 2012) (denying motion for class certification).  At least some of those cases, including *Gass*, appear to suffer from weaknesses not present in the cases at bar.  Moreover, to the extent Lowe's might have been able to raise various defenses, such as, for example, the collection of ZIP codes in connection with special delivery orders, due to the absence of formal discovery in this matter, the magnitude of those risks are somewhat difficult to gauge.

---

[2] As a practical matter, where the class' actual recovery falls far short of the full amount made available, and other fees and costs deplete a significant portion of the common fund, application of the rule articulated in *Williams* is of questionable wisdom.  Here, the requested award of $750,000 is nearly half of the class' actual recovery of $1,567,854.

**United States District Court**
For the Northern District of California

1    Of course, that this case was settled prior to much formal process is significant in its own

2  right.  No formal discovery or substantive motion practice occurred.  The efforts expended by

3  plaintiffs' counsel must, and no doubt did, reflect the limited nature of these proceedings.  While

4  plaintiffs' counsel rightly emphasized, at oral argument, that early settlement is to be encouraged

5  rather than penalized, by the same token, when a case settles quickly, counsel is freed up to attend to

6  other matters.  All told, plaintiffs' counsel reports having spent between 700 and 800 hours

7  prosecuting these cases, and calculate the lodestar amount as $444,011.40.  While the $750,000

8  amount requested may dovetail with the Ninth Circuit's nominal benchmark, the legal uncertainties

9  presented by these cases were relatively limited compared to the average consumer class action, and,

10  accordingly, resolved fairly quickly.  In consideration of the positive result achieved for the class,

11  the quality of the representation, as well as the time spent litigating the case, a more suitable award

12  is 22% of the common fund, or $640,000.  That award reflects a multiplier of 1.44 over the lodestar,

13  and substantially exceeds plaintiffs' counsels' actual billable hours and costs.  It represents a

14  significant award that both compensates counsel for incurring the litigation risks these matters

15  entailed at their own expense, and provides ample incentive for the prosecution of consumer actions

16  generally.

17  B. Incentive payments & *cy pres* award

18    Trial courts have discretion to award incentives payments to class representatives.  *In re*

19  *Mego Fin'l Corp. Sec. Litig.*, 213 F.3d 454, 463 (9th Cir. 2000).  A request of $5,000 per named

20  plaintiff is presumptively reasonable and appropriate here.  The request is therefore granted.

21    Finally, given that the amount described above falls short of the $2.58 million minimum

22  required payment, the settlement agreement operates to increase the *cy pres* award to $175,146, to

23  be directed in equal shares to the Consumer Federation of California and the Privacy Rights

24  Clearinghouse.  The law requires that such payments retain some connection to the plaintiff class

25  and the underlying claims, and further, must be "the next best distribution" to giving funds to the

26  class.  *Dennis v. Kellogg Co.*, --- F.3d ----, 2012 WL 2870128, at *4 (9th Cir. July 13, 2012)

27  (quoting *Six (6) Mexican Workers*, 904 F.2d at 1308).  "A *cy pres* award must be guided by (1) the

28  objectives of the underlying statute(s) and (2) the interests of the silent class members, … and must

not benefit a group too remote from the plaintiff class." *Id.* (internal citations and quotation marks omitted).  Here, the *cy pres* recipients meet that standard, given their focus on consumer privacy issues.  Accordingly, the *cy pres* award is also approved.

### III. CONCLUSION

For the reasons set forth above, the motion is granted.

IT IS SO ORDERED.

Dated:  8/24/12

_____
RICHARD SEEBORG
UNITED STATES DISTRICT JUDGE

United States District Court
For the Northern District of California